IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 05-10067 |
| KYRON MURDOCK, | ) | |
| Defendant. | ) | |

**RESPONSE TO MOTION TO SUPPRESS EVIDENCE**

Now comes the United States of America by Jan Paul Miller, United States Attorney for the Central District of Illinois, and Bradley W. Murphy, Assistant United States Attorney, and in response to defendant's Motion To Suppress, states as follows:

I.   Factual Background

A.   On the afternoon of August 25, 2005, the defendant was a front seat passenger in a car stopped for traffic violations in a high crime area of Peoria known for drug trafficking. Neither front seat passenger was wearing a seat belt. When the car came to a stop in the 700 block of West Armstrong, the defendant jumped from the car and ran southbound, jumped a fence, then ran eastbound toward the 1300 block of North Sheridan with officers in pursuit. The defendant was found attempting to hide on the porch of 608 West Armstrong, and when

1

handcuffed by officers, remarked that he had fled because he had "dope in his pocket" and "didn't want to get caught because I was on parole." During the pat down search, he stated "the dope is in my right pocket." Officer Hightower asked him for permission to check his right pocket and the defendant replied "yes." Officer Hightower then removed both crack cocaine and marijuana from the defendant's right pocket. The defendant was then secured in the back seat of a squad car and transported to the police station.

    B.    At the police station, while still in the squad car, Officer Allenbaugh read the defendant his Miranda rights from a card that he carried. The defendant waived his rights and proceeded to talk to the officers, admitting his possession of the crack cocaine and marijuana but denying possession of a gun recovered by police.

    C.    Sergeant Theobald arrived at the scene of the traffic stop that afternoon and conducted a search of the path used by the defendant to flee from the stop. In the alley behind 1314 North Sheridan, he located a Smith and Wesson .22 caliber pistol in an empty plastic garbage can. After the weapon was secured, Sergeant Theobald returned to the police station where he spoke to the defendant, who was still in the back seat of the squad car. The defendant confirmed that he had been read his rights, again admitted possession of the

drugs, and thereafter admitted to possessing the handgun for his own personal protection. After Theobald concluded, Officer Allenbaugh again interviewed the defendant. After reminding him of his rights, the defendant also admitted to Allenbaugh that he had possessed the gun.

II.   LEGAL FRAMEWORK

    A.   Vehicle Stop

        1.   Traffic stops are reasonable when police have probable cause to believe a traffic violation has occurred. *United States v. Lawuary*, 211 F.3d 372, 375 (7th Cir. 2000), *overruled on other grounds by United States v. Ceballos*, 302 F.3d 679 (7th Cir. 2002).

        2.   As part of the stop, the police may order both driver and occupants out of the vehicle, pending the officer's completion of his duties relative to the stop. *Maryland v. Wilson*, 519 U.S. 408, 414 (1997).

    B.   Detention

        1.   Sudden flight in a high crime area can give rise to reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119 (2000).

        2.   The police may temporarily stop a person to investigate whether the person has recently committed or is about to

        commit a crime. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The determination of whether the stop is reasonable and whether the police have sufficient information to make an investigative detention requires an examination of the totality of the circumstances, which encompasses the experience of the officers and the behavior of the defendant. *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000).

    3.    Police may conduct a non-invasive pat-down search of the person detained for weapons, and may seize contraband when its nature is immediately apparent. *United States v. Rivers*, 121 F.3d 1043, 1045-46 (7th Cir. 1997).

C.    <u>Arrest</u>

    1.    A voluntary consent to search "lifts" the warrant requirement. *United States v. Quinones-Sandoval*, 943 F.2d 771, 774 (7th Cir. 1991). Whether the consent is voluntary is determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

    2.    When police make an arrest, they may search the arrestee's person and the area "within his immediate control" without

        obtaining a warrant. *Chimel v. California*, 395 U.S. 752, 762-63 (1969).

    3. Warrantless arrests must be supported by probable cause. Probable cause to make an arrest exists when the police possess reasonably trustworthy knowledge of facts and circumstances that would warrant a reasonable man to believe that a suspect had committed or was committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

    4. Courts look to the totality of the circumstances to assess whether the police had probable cause for arrest. *United States v. Navarro*, 90 F.3d 1245, 1254 (7th Cir. 1996).

D. <u>Admissions/Abandonment</u>

    1. In order to protect an individual's rights against self-incrimination, a suspect must be advised of certain rights before being subjected to custodial interrogation by police. *Miranda v. Arizona*, 384 U.S. 436 (1966). On the other hand, volunteered statements, such as those not given in response to any question, are not protected by Miranda. *McGowan v. Miller*, 109 F.3d 1168, 1175 (7th Cir. 1997).

      2.     A reasonable expectation of privacy in something can be waived where it has been abandoned, and courts look to the totality of the circumstances to determine abandonment. *United States v. Rem*, 984 F.2d 806, 810-11 (7th Cir. 1993).

III. ANALYSIS

    A.  <u>Vehicle Stop</u>

        1.    The vehicle stop was based on probable cause to believe that traffic violations had occurred. The defendant, lacking his front passenger seat belt, was one of the offenders. As such, he was subject to detention at the scene of the stop.

    B.  <u>Detention/Arrest</u>

        1.    The chase and stop of the defendant was lawful for any one of three different reasons. First, by fleeing the scene of the lawful traffic stop, he committed the crime of Resisting or Obstructing a Peace Officer in violation of the Illinois Criminal Code. *See* 720 ILCS 5/31-1(a). By committing this crime in the presence of the officers, he was subject to a warrantless arrest after the chase.

        2.    Second, the defendant's immediate flight from the scene of the

        traffic stop provided reasonable suspicion for the officers to make a Terry stop for further inquiry. *See Wardlow*, 528 U.S. at 124-25. That stop and detention was accomplished in the next block after the chase.

    3. Last, after he was found by officers, he volunteered that he was committing the crime of possession of a controlled substance, and consented to a search of his person where officers found the drugs in his pocket. Under the totality of the circumstances, the officers reasonably believed he was committing the offense of possession of a controlled substance.

C. <u>Search of His Person</u>

    1. The search of defendant's person was lawful for any one of three different reasons. First, it was incident to his lawful arrest for Resisting or Obstructing a Peace Officer.

    2. Second, the search was proper as a pat-down search of a suspect detained for reasonable suspicion after his flight in a high crime neighborhood.

    3. Last, the search of his pocket revealing the drugs was done

with the defendant's consent. Under the totality of the circumstances, the consent was voluntarily given. *See United States v. Grap*, 403 F.3d 439, 443 (7th Cir. 2005).

D. <u>Recovery of the Weapon</u>

1. The defendant does not claim any possessory interest in the pistol recovered, nor could he.

2. When he abandoned the weapon in the garbage can, while fleeing down the alley, he relinquished an expectation of privacy in the firearm.

E. <u>Admissions</u>

1. The defendant's admissions were voluntary on each occasion. The defendant's statements made at the scene of his detention/arrest were volunteered and not in response to any questions by the officers. The police are not prohibited from listening to his voluntary statements. *See United States v. Briggs*, 273 F.3d 737, 739 (7th Cir. 2001).

2. Later, Officer Allenbaugh advised the defendant of his Miranda rights from a card that he carried. The defendant waived those rights and talked first to Allenbaugh, then to

Theobald, and then to Allenbaugh again. On each occasion, the defendant was reminded of his rights and spoke freely and voluntarily.

        Respectfully submitted,

        UNITED STATES OF AMERICA

        JAN PAUL MILLER
        UNITED STATES ATTORNEY


        **s/: BRADLEY W. MURPHY**

        BRADLEY W. MURPHY
        Assistant United States Attorney
        One Technology Plaza
        211 Fulton Street, 4th Floor
        Peoria, Illinois 61602
        Telephone: 309.671.7050

## CERTIFICATE OF SERVICE

I hereby certify that on **October 31, 2005**, I electronically filed the plaintiff's **RESPONSE TO MOTION TO SUPPRESS EVIDENCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**KARL W. BRYNING**

and I hereby further certify that I have mailed, by United States Postal Service, the plaintiff's **RESPONSE TO MOTION TO SUPPRESS EVIDENCE** to the following non CM/ECF participants:

**Not Applicable**

**s/: Stephanie Pennington**
**Paralegal Specialist**
