E-FILED
Tuesday, 18 April, 2006  09:06:38 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff*,

    *v.*       Case No. 05-10067

KYRON MURDOCK,

    *Defendant*.

**DEFENDANT'S COMMENTARY ON SENTENCING FACTORS**

**I.**

**INTRODUCTION**

Neither Kyron Murdock nor the government has any objection to the substance of the presentence report. Assuming the Court spots no mistake either, the "advisory," *United States v. Booker*, 125 S. Ct. 738, 757 (2005), guideline range will stand at 41-51 months. After the Court considers that advisory range, the question will remain: what actual sentence will be "sufficient, but not greater than necessary" to meet the objectives of 18 U.S.C. § 3553(a) that now are the controlling considerations in every federal sentence? This commentary addresses that question.

## II.

## DISCUSSION

**A.    Overview.**

Justice Breyer's remedial opinion for the *Booker* court instructs federal judges that the sentencing considerations set out in § 3553(a) now control the imposition of sentence, rather than binding guidelines. While courts must consider the guideline range, that now is advisory only.

Section 3553(a) requires a court to consider (among other factors) the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide "just punishment," afford adequate deterrence, protect the public, and provide needed educational or vocational training, medical care, "or other correctional treatment." 18 U.S.C. §§ 3553(a)(1), (2)(A) – (D). Courts still must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," too. 18 U.S.C. § 3553(a)(6).

In considering the history and characteristics of the defendant, the United States Sentencing Guidelines capably collect most of the aggravating factors that courts commonly encounter. That tilt toward the aggravating factors appears in the predominance of upward adjustments over downward adjustments in specific offense characteristics listed in each offense guideline in Chapter 2 of the guidelines, and in the Chapter 3 adjustments. Factors that add points to the offense level far outnumber factors that subtract points.

The emphasis on the aggravating continues in subchapters 5H and 5K, which discourage or forbid more grounds for downward departure than they encourage. Subchapter 5H includes no recommended downward departures and only two departure considerations (criminal history, § 5H1.8, and dependence upon criminal activity for livelihood, § 5H1.9) that cut both ways. Subchapter 5K includes 13 suggestions of upward departure (§§ 5K2.1 through 5K2.9, 5K2.14, 5K2.17, 5K2.18, 5K2.21), but only eight suggestions of downward departure (§§ 5K1.1, 5K2.10, 5K2.11, 5K2.12, 5K2.13, 5K2.16, 5K2.20 and 5K2.22).

That is not necessarily an inappropriate imbalance. The trend in due process jurisprudence of sentencing, most prominent in capital cases, is to limit aggravating factors to those set out in statutes, but to reject limits on mitigating factors. *See Penry v. Lynaugh*, 492 U.S. 302, 327-28 (1989) ("the jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense;" there, mental retardation and childhood abuse), *overruled on other grounds*, *Atkins v. Virginia*, 536 U.S. 304 (2002); *Buchanan v. Angelone*, 522 U.S. 269, 276 (1998) ("the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence"); *compare* 18 U.S.C. § 3592(a) (in a capital case, sentencing jury "shall consider *any* mitigating factor, including the following;" italics added), *with* § 3592(b) (same jury may consider only enumerated statutory aggravating factors).

The sentencing guidelines provide a useful analog in non-capital cases. They collect many statutory aggravating factors and a few mitigating factors, but courts now

3

appropriately may look to individual cases and circumstances for any other mitigating factors that may apply.

A focus on enumerated aggravating factors, but on both enumerated and non-enumerated mitigating factors, fits closely with the statutory command that the sentence in the end be "sufficient, but not greater than necessary" to achieve the goals of sentencing that § 3553(a) establishes. Congress' requirement is the lowest adequate sentence. The statute forbids an adequate sentence that is higher than it might be. The statute favors mitigation of the sentence, although not depreciation of the crime.

### B. The Instant Case.

Kyron Murdock surveys both the aggravating and mitigating factors that apply to his case. Those underlie most of the goals that § 3553(a) lists.

1.  The guideline calculation here appropriately and adequately considers all aggravating factors that apply to Kyron Murdock's felon in possession of a firearm crime. His enhanced base offense level of 20 captures all relevant conduct. Further, Murdock's criminal history resulted in 8 criminal history points and Criminal History Category of III. Murdock objects to none of this. The guideline calculations are appropriate.

2.  The guideline range does not consider most mitigating factors, though. This case includes other important factors that the guideline range does not reflect. Murdock considers those now.

The presentence report and supporting character reference letters reflect a young man from a broken home who lacked positive role models to follow in life. His father states that he was in jail for most of Kyron's younger life and that Kyron was left to take

care of himself. His father also indicates that Kyron was exposed to drug use "around him all the time" when he was growing up.

The presentence report and letters reflect a young man who began daily drug use at age 14 to escape. Mr. Murdock reported alcohol abuse at an early age and a pattern of smoking *at least* five "blunts" of marijuana a day from age 14 up the point of his recent incarceration. His past participation in inpatient drug treatment in 2002 terminated unsuccessfully.

Apparently with no real parental supervision, Mr. Murdock fell victim to the streets, for the most part taking care of himself. In May of 2005, less than one year ago, his closest family member and friend, brother Jamar Murdock, was murdered in cold blood while walking down the street. Jamar was only 22 years old. He sustained a gunshot wound to the head. Mr. Murdock never had an opportunity to say goodbye to his brother.

After his brother's death, Mr. Murdock felt alone, scared and intense guilt. He felt like he was not there for Jamar when he needed him even though Jamar had always been there for him. Mr. Murdock feels that his current incarceration has only added to the emotional burden that his mother has carried since Jamar's death. Mr. Murdock wants to plan for a legitimate future with his children and his future wife.

The mitigation in this record lies in the probability that eliminating drug addiction and providing access to educational and vocational programs within the Bureau of Prisons would eliminate his danger to the community. Drugs threaten to destroy his own life. Mr. Murdock wants a legitimate occupation. He has taken steps in that direction by obtaining his GED. If the drug and alcohol use disappeared, and he were to attain a vocation, it appears that the crimes would also disappear.

Eventually, of course, even a young adult must take responsibility for his own drug and alcohol abuse and its attendant damage. That time is now for Mr. Murdock. The Court should send him to prison. A sentence of 41 months will provide "just punishment," 18 U.S.C. § 3553(a)(2)(A), but not more than necessary. It also will assure him a substantial period of time to dry out, participate in residential drug treatment pursue vocational training, at least. Drug treatment and educational / vocational programs are the two forms of "correctional treatment" that he needs. And at least initially, prison will be "the most effective manner" of treatment.

A sentence of 41 months will be sufficient, but not greater than necessary, to reflect the seriousness of this offense to promote respect for the law, and to afford adequate deterrence. 18 U.S.C. §§ 3553(a)(2)(A), (B).

The sentence here, if it is to protect the public in the long run and correct Kyron Murdock, should set him on a new trajectory, away from drugs and alcohol. Because the statute requires that the sentence be sufficient to do that, but also not greater than necessary, the Court in the end must ask whether fifty-one (51) months in prison, with the concomitant cost to taxpayers and loss of opportunity for Murdock to make meaningful child support payments or to know his children, will suit that purpose, while forty-one (41) months in prison will not. Defense counsel suggests that an additional 10 months are not likely to add much. Forty-one (41) months allows sufficient time to get the full benefit of the Bureau of Prisons' drug treatment and educational / vocational programs, and certainly should be time enough abstaining from drugs and alcohol to break dependence. If it is not, another ten (10) month is unlikely to help.

## III.

## EVIDENCE

*A. Letters.* Attached to this Commentary as Appendix A are letters which Mr. Murdock submits to the Court as mitigating evidence.

## IV.

## CONCLUSION

All statutory and other relevant factors considered, a sentence of forty-one (41) months, rather than fifty-one (51) months, would be "sufficient, but not greater than necessary" in this case. A recommendation for the BOP's residential drug abuse treatment program, and a supervised release condition requiring payment of child support also make sense. Defense counsel recommends a sentence with at least these features.

Dated at Peoria, Illinois, April 18, 2006.

Respectfully submitted,

KYRON MURDOCK,
*Defendant*

s/ Ronald L. Hanna

Ronald L. Hanna
Attorney for Defendant
411 Hamilton Blvd, Suite 1004
Peoria, Illinois 61602
Phone: 309/676-3608
FAX: 309/676-3219
Email: lenhanna@sbcglobal.net

**APPENDIX A**

(1)  Letter from Jennifer Viel (Friend)

(2)  Letter from Faith Holocker (Fiancé)

(3)  Letter from Elizabeth Elmore (Mother)

(4)  Letter from Kyron Murdock (Defendant)

(5)  Letter from Milus Murdock (Father)

CERTIFICATE OF SERVICE

    I hereby certify that on April 18, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Bradley Murphy, Assistant U.S. Attorney, 211 Fulton Street, Suite 400, Peoria, IL 61602.

                                          s/ Ronald L. Hanna

                                          Ronald L. Hanna
                                          Attorney for Defendant
                                          411 Hamilton Blvd, Suite 1004
                                          Peoria, Illinois 61602
                                          Phone: 309/676-3608
                                          FAX: 309/676-3219
                                          Email: lenhanna@sbcglobal.net