E-FILED
Tuesday, 24 July, 2007 11:22:55 AM
Clerk, U.S. District Court, ILCD

# United States Court of Appeals

### For the Seventh Circuit

### Chicago, Illinois 60604

### JUDGMENT - WITH ORAL ARGUMENT

CERTIFIED COPY
FILED
JUL 2 6 2007
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Date: July 3, 2007

BEFORE:       Honorable JOHN L. COFFEY, Circuit Judge

             Honorable JOEL M. FLAUM, Circuit Judge

             Honorable ANN CLAIRE WILLIAMS, Circuit Judge

No. 06-2183

UNITED STATES OF AMERICA,
             Plaintiff - Appellee

   v.

KYRON MURDOCK,
             Defendant - Appellant

CERTIFIED COPY
A True Copy:
Teste:

Clerk of the United States
Court of Appeals for the
Seventh Circuit.

Appeal from the United States District Court for the
Central District of Illinois
No. 05 CR 10067, Joe Billy McDade, Judge

      The judgment of the District Court is AFFIRMED,
in accordance with the decision of this court entered on this date.

(1061-110393)

# United States Court of Appeals

## For the Seventh Circuit

### Chicago, Illinois 60604
### NOTICE OF ISSUANCE OF MANDATE

DATE:     July 25, 2007

TO:       John M. Waters
          United States District Court
          Central District of Illinois
          Room 309
          100 N.E. Monroe Street
          Peoria, IL  61602

FROM:     Clerk of the Court

RE:       06-2183
          USA v. Murdock, Kyron
          05 CR 10067, Joe Billy McDade, Judge

          Herewith is the mandate of this court in this appeal, along
          with the Bill of Costs, if any.  A certified copy of the
          opinion/order of the court and judgment, if any, and any
          direction as to costs shall constitute the mandate.

          [ ] No record filed
          [X] Original record on appeal consisting of:
ENCLOSED:                               TO BE RETURNED AT LATER DATE:
          [1]     Volumes of pleadings              [ ]
          [ ]     Volumes of loose pleadings        [ ]
          [ ]     Volumes of transcripts            [ ]
          [ ]     Volumes of exhibits               [ ]
          [ ]     Volumes of depositions            [ ]
          [3]     In Camera material                [ ]
          [ ]     Other_____      [ ]

                  Record being retained for use     [ ]
                  in Appeal No. _____

          Copies of this notice sent to:        Counsel of record
          [X]     United States Marshal
          [X]     United States Probation Office

**NOTE TO COUNSEL:**
          If any physical and large documentary exhibits have been filed in
          the above-entitled cause, they are to be withdrawn ten days from the
          date of this notice.  Exhibits not withdrawn during this period will
          be disposed of.

          Please acknowledge receipt of these documents on the enclosed copy
          of this notice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
          Received above mandate and record, if any, from the Clerk, U.S.
          Court of Appeals for the Seventh Circuit.
Date: _____    _____
(1071-120397)                          Deputy Clerk, U.S. District Court

FILED

JUL 2 6 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CERTIFIED COPY

# In the
# United States Court of Appeals
## For the Seventh Circuit

FILED

JUL 2 6 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

No. 06-2183

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KYRON MURDOCK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 05 CR 10067—**Joe Billy McDade**, *Judge.*

ARGUED JUNE 13, 2007—DECIDED JULY 3, 2007

Before COFFEY, FLAUM, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.*   Kyron Murdock was caught
with marijuana and crack cocaine in his pocket after
fleeing from police, and later admitted that the drugs, as
well as a gun police found in a nearby garbage can,
belonged to him. Prior to his jury trial on drug and gun
possession charges, Murdock moved to suppress his
confession, claiming that it was involuntary because the
police did not first administer *Miranda* warnings. Follow-
ing a suppression hearing in which Murdock presented no
evidence, the district court found that he had received
*Miranda* warnings and denied the motion. On appeal,
Murdock presents a different theory in support of his
motion to suppress. For the following reasons, we uphold

2                                        No. 06-2183

the denial of Murdock's motion to suppress and affirm his
convictions.

# I. BACKGROUND

Prior to trial, Murdock filed a motion to suppress in
which he asserted simply that the officers did not read him
the *Miranda* warnings before he confessed, and that, as a
consequence, he "made various incriminating oral state-
ments while in custody" that were "involuntary and were
obtained in violation of . . . [his] rights as guaranteed
under the Fifth Amendment." At the suppression hearing,
the district court began by asking whether either party
wished to make a statement. Murdock responded only that
he stood on his written motion. Murdock's sole argument
was that the officers failed to read him the *Miranda*
warnings.

During the remainder of the suppression hearing, the
government presented the testimony of Officers Carey
Hightower and Joshua Allenbaugh, and Sergeant Douglas
Theobald, all of the Peoria, Illinois police department.
Officer Hightower was the first to testify. He explained
that on August 25, 2005, he was patrolling a high-crime
area in Peoria with Officers Allenbaugh and Lee Edward
Braun when he noticed that a passing car was missing its
front license plate and that both the driver and front-seat
passenger were not wearing seatbelts. The officers sig-
naled for the car to pull over, and the driver immediately
complied. According to Hightower, as soon as the car
stopped, the front-seat passenger—whom he identified as
Murdock—jumped out and started running. Officers
Allenbaugh and Hightower gave chase and caught him
on a nearby porch.

Officer Hightower claimed that, as he handcuffed
Murdock and conducted a protective pat-down, Murdock

told him that he ran because he had "dope" in his right pants pocket and did not want to get caught violating his parole. With Murdock's permission, Hightower searched the pocket and recovered one baggie containing crack and another containing marijuana. Hightower then put Murdock in the squad car, and Officer Braun drove Murdock and Hightower back to where the chase began. As Hightower completed the necessary paperwork, Sergeant Theobald arrived. Hightower told him about the chase and the drugs he had found in Murdock's pocket and then returned to his paperwork while Theobald and another officer retraced the chase route with a dog.

After Sergeant Theobald recovered a gun at the scene, Officer Hightower and Officer Allenbaugh drove Murdock to the police station. Once outside the station, the three men remained in the car and Allenbaugh read Murdock the *Miranda* warnings. Hightower maintained that he heard Murdock tell Allenbaugh that he understood his rights and wished to talk to the officer, but neither officer asked Murdock to sign a written waiver. Moments later, Hightower left the car to secure the drugs he found in Murdock's pocket. Accordingly, he did not hear Murdock's confession.

Officer Allenbaugh also testified at the suppression hearing. He confirmed that he read *Miranda* warnings to Murdock in the patrol car, and that Murdock said he understood his rights and wished to talk. Allenbaugh did not ask Murdock to sign a written *Miranda* waiver because he believed Murdock wished to speak to him. Allenbaugh testified that he did not tape-record Murdock's statements because he typically does not do so absent a specific request. Allenbaugh also stated that he never made any threats or promises to Murdock in exchange for a statement and that Murdock never requested to have an attorney present during their conversation.

Officer Allenbaugh testified that during their conversa-
tion, Murdock told him that he ran from the officers
because he was on parole, and that the drugs in his pocket
belonged to him. When Allenbaugh advised Murdock that
possession of marijuana and crack violated his parole,
Murdock "started to get agitated." Allenbaugh then asked
Murdock whether he knew that the police had recovered a
weapon, and Murdock said that he "never had a gun so
he didn't know what [the officer] was talking about."
Allenbaugh asked if the weapon belonged to the driver of
the car. Murdock responded that he would not "pin that
on him," blurted some expletives, and then asked to
speak with Allenbaugh's sergeant. Allenbaugh testified
that he contacted Sergeant Theobald and, while he waited
for him to arrive, called the Department of Corrections
from the car to request that they issue a parole-violation
warrant for Murdock.

Once Sergeant Theobald arrived, Officer Allenbaugh
repeated the *Miranda* warnings, exited the patrol car, and
informed Theobald that he had read Murdock his
rights. Allenbaugh explained that he left the car because
Murdock had been cursing and screaming at him and
he did not think his presence would be helpful. While
Murdock spoke to Theobald, he sat in Theobald's car
until the sergeant signaled him back to the squad car.
Theobald left and Allenbaugh reentered the car. He
reminded Murdock of his rights, but did not ask any
further questions. Instead, while Allenbaugh waited for
the transport wagon, Murdock volunteered that his
brother had been killed by a gun and that if Allenbaugh
needed to check the gun for fingerprints, he would not
find any on the trigger but that he might find some on
the rest of the gun.

Finally, Sergeant Theobald testified to his involve-
ment with the case. He stated that upon arriving at the
scene he was briefed by Officer Hightower and requested

that a dog be brought to the area because they had found crack in Murdock's pocket and because the police previously had recovered handguns from the driver's car. When the dog and its handler arrived, Theobald accompanied them along the path that Murdock took when he ran from the car. Inside a garbage can, Theobald found a brown-handled, chrome, semiautomatic handgun sitting in a small amount of water.

While still at the scene, Sergeant Theobald received a call from Officer Allenbaugh that Murdock wanted to talk. Sergeant Theobald drove to the station where Allenbaugh was parked with Murdock and got into the passenger side of the police car. As Allenbaugh left the car, he told Theobold that he had given Murdock the *Miranda* warnings. Sergeant Theobald confirmed with Murdock that he had been read his rights and told Murdock that he found a gun along the path that Murdock had fled. Murdock responded that if the gun was chrome with a brown handle, it was his. Theobald then asked why he was carrying a gun and where he got it. Murdock responded that he had received the gun the day before from a drug addict during a drug transaction. Murdock also told Theobald that he had admitted to Officers Allenbaugh and Hightower that the drugs found in his pocket belonged to him.

When asked why he did not obtain a written statement, ask a witness to be present, or videotape his conversation with Murdock, Sergeant Theobald responded that when he entered the car, he did not know where the conversation was going to go. He further explained that in the street-crimes unit officers do not typically obtain written statements and do not videotape interviews except during homicide investigations. Theobald also testified that he did not take Murdock into the station because Officer Allenbaugh was awaiting the transport wagon to take Murdock to the county jail.

6

The district court credited the officers' testimony and denied Murdock's motion to suppress, explaining that there was no evidence to suggest that he did not receive *Miranda* warnings before making his admissions. The court also credited Sergeant Theobald's testimony that the street-crimes unit does not routinely obtain *Miranda* waivers in writing, but it suggested that in the future the police should attempt to have at least one other officer present to witness statements. Following a jury trial, Murdock was convicted and sentenced to a total of 41 months' imprisonment.

## II. ANALYSIS

On appeal, Murdock has abandoned his argument that the confession was not preceded by *Miranda* warnings. Instead, he now contends that his waiver of his Fifth Amendment rights and subsequent confession were involuntary, and thus unreliable, due to the "suspect, intimidating, and overreaching" conditions under which he was held. The government counters that Murdock waived this new argument—or alternatively forfeited it—because in the district court he merely argued that the police did not administer *Miranda* warnings and never contended that his confession was coerced.

The use of the word "waiver" when one actually means "forfeiture" has led to some difficulty distinguishing the two terms. *See, e.g., United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005); *United States v. Clarke*, 227 F.3d 874, 880-81 (7th Cir. 2000). To clarify the distinction, we have explained that waiver "is canonically defined as an intentional relinquishment of a right," whereas forfeiture "is where the right is taken away from its holder as a penalty for failure to assert it in a clear and timely manner." *United States v. Johnson*, 223 F.3d 665, 668 (7th Cir. 2000). The distinction is important because an argument

No. 06-2183                                               7

that has been waived is unreviewable on appeal, whereas a forfeited argument may be reviewed for plain error. *Clarke*, 227 F.3d at 881.

The government asserts that Murdock waived the issue of police coercion that he raises for the first time on appeal. In his motion to suppress, Murdock argued only that his confession was involuntary because it was not preceded by *Miranda* warnings, an allegation refuted by the uncontested evidence and rejected by the district court. At the evidentiary hearing on his motion, Murdock did not expand his contention, though the court gave him the opportunity to elaborate on his motion. One might argue that counsel's silence when invited to speak constituted a waiver of any additional theories of suppression, but an equally plausible reading is that counsel simply declined to expound on his *Miranda* theory without consciously waiving all other theories. On balance, we think this case presents a forfeited argument for which review is not automatically foreclosed.

Forfeited suppression arguments present a special situation because of the operation of Federal Rule of Criminal Procedure 12(e): before we will review a forfeited suppression argument for plain error, the defendant must first show good cause for failing to make that argument in the district court. *Johnson*, 415 F.3d at 730-31. In this case, Murdock filed a timely motion to suppress in which he limited the court's consideration to whether police administered *Miranda* warnings. He did not ask the court to consider whether the conditions under which he waived his Fifth Amendment rights were coercive, and his appellate counsel offers no explanation for his previous attorney's failure to do so. Instead, in his reply brief, appellate counsel contends that Murdock's argument at his suppression hearing was sufficient to encompass his argument on appeal. However, we see no reason why trial counsel could not have broadened his argument, and by

8

failing to do so he gave the government no reason to offer evidence to rebut his new allegation.

But even assuming that Murdock could demonstrate good cause for failing to raise his coercion argument at his suppression hearing, he cannot demonstrate plain error. Murdock argues that the totality of the circumstances surrounding his *Miranda* waiver and subsequent confession rendered his confession involuntary. Specifically, he argues that his confession was coerced because he remained handcuffed in the back seat of the police car for a "considerable period of time" instead of being taken into the station, and because Officer Allenbaugh "threatened" to charge him with possessing the gun even though—according to Murdock—there was no evidence linking him to the weapon. Murdock also points to the lack of witnesses during each interrogation and the absence of a written *Miranda* waiver.

We do not rule on voluntariness questions in the first instance. The voluntariness of a confession is a question of fact for the district court, not a legal determination for this Court. *See United States v. Ceballos*, 302 F.3d 679, 694 (7th Cir. 2002); *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). A confession is involuntary only where it was obtained through police coercion or overreaching that overbore the accused's free will. *See Dickerson v. United States*, 530 U.S. 428, 434 (2000); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Conner v. McBride*, 375 F.3d 643, 651 (7th Cir. 2004). Relevant circumstances include, but are not limited to, whether the defendant received *Miranda* warnings; the defendant's age, intelligence level, education, and mental state; the conditions under which the defendant was interrogated (i.e., duration, environment, and access to restroom facilities and food); and whether the defendant was physically punished. *See Schneckloth*, 412 U.S. at 226;

*United States v. Charles*, 476 F.3d 492, 497 (7th Cir. 2007); *Conner*, 375 F.3d at 651.

The district court considered all of the evidence presented at the suppression hearing, credited the officers' testimony, and found that Murdock made his statements voluntarily after receiving *Miranda* warnings. Nothing in the record suggests that the district court erred by denying Murdock's motion to suppress. Contrary to Murdock's contention, there was no evidence presented at the suppression hearing that Murdock was confined to the back seat of the police car for a "considerable period of time." The record is notably silent on the length of his confinement in the police car, although that does not make a difference in this case. *See Huerta*, 239 F.3d at 872 (noting that eleven hours of detention was not so oppressive to render a confession involuntary where the defendant was not continuously interrogated and where no credible evidence existed that she was too tired, medicated, or hungry to understand the proceedings); *United States v. Doe*, 149 F.3d 634, 639 (7th Cir. 1998) (holding that questioning a handcuffed defendant in the back of a police car in a remote location for more than an hour was not sufficient to render a waiver involuntary).

Nor was there any evidence that Officer Allenbaugh psychologically coerced Murdock into confessing by threatening to charge him with possession of the gun. The record shows that, when Murdock asked what he would be charged with, Allenbaugh responded that Murdock would be charged with possession of drugs and a gun. This was not a threat, but rather a truthful response to Murdock's question based on the evidence the police found during their investigation. *See United States v. Miller*, 450 F.3d 270, 272 (7th Cir. 2006) (holding that where police had probable cause to arrest a suspect's girlfriend, the suspect's confession was not coerced where

police threatened to arrest the girlfriend if he did not confess, stating "suspects are not entitled to full information . . . but they can't complain when they get it and learn that some of the options are unpalatable").

Finally, the officers' failure to obtain a written waiver from Murdock does not render his oral waiver or subsequent confession involuntary. *See United States v. Gell-Iren*, 146 F.3d 827, 830 (10th Cir. 1998) (upholding the validity of an oral *Miranda* waiver and finding that the failure to sign a waiver-of-rights form does not render a waiver involuntary); *United States v. Bosby*, 675 F.2d 1174, 1182 n.13 (11th Cir. 1982) (same); *see also North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (holding that an explicit statement of waiver was not necessary to support a finding that the defendant waived his right to remain silent); *Gorham v. Franzen*, 760 F.2d 786, 794-95 (7th Cir. 1985) (explaining that the failure to sign a written waiver was not dispositive of the waiver issue and that the suspect's failure to invoke his rights, which he knew and understood, may amount to a waiver of the right to remain silent). Furthermore, although the district court offered its view that in the future the Peoria Police Department should, to the extent practicable, require that another officer witness a *Miranda* waiver and confession, that advice has no legal significance. What matters here is that the court credited the testimony of three different officers that after Murdock received *Miranda* warnings, he chose to waive his rights and confess.

## III. CONCLUSION

No plain error is shown on this record, and we therefore uphold the district court's denial of Murdock's motion to suppress, and AFFIRM his convictions.

No. 06-2183                                                              11

A true Copy:

Teste:

Clerk of the United States Court of
Appeals for the Seventh Circuit

USCA-02-C-0072—7-3-07